# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2536 | **DATE** | 1/12/2001 |
| **CASE TITLE** | USA ex rel. Michael Keys vs. William R. Barham | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Keys' petition for a writ of habeas corpus is denied. Judgment is entered in favor of the respondent William R. Barham and against petitioner Michael Keys. This case is dismissed with prejudice.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN 16 2001 date docketed | |
| | Notified counsel by telephone. | | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | 01 JAN 12 PM 4:25 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. MICHAEL KEYS, | ) ) ) | |
| Petitioner, | ) ) | No. 00 C 2536 |
| v. | ) ) | Judge Ruben Castillo |
| WILLIAM R. BARHAM,[1] | ) ) ) | |
| Respondent. | ) | |

DOCKETED
JAN 1 6 2001

## MEMORANDUM OPINION AND ORDER

Michael Keys petitions this Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Following a bench trial, Keys was convicted of three drug offenses: (1) delivery of a controlled substance; (2) possession of a controlled substance with intent to deliver; and (3) possession of a controlled substance with intent to deliver within 1,000 feet of a public park. He was sentenced to consecutive prison terms of three, ten, and five years respectively. Keys argues that he is entitled to habeas corpus relief because, *inter alia*, (1) his conviction was obtained pursuant to an illegal search and arrest in violation of the Fourth Amendment; (2) he was subject to illegal forfeiture of $149.00 and double jeopardy in violation of the Fifth Amendment; (3) it was unconstitutional for the trial court to hear all three of his cases back to back; and (4) the police officer was not able to make an identification of the person who supposedly sold her drugs, and Keys was denied forensic fingerprint testing. For the reasons stated below, we deny Keys' habeas petition.

---

[1] William R. Barham is now the warden of Shawnee Correctional Center, and the Court has substituted him, in Rodney L. Tally's place, as the proper respondent.

\\6

## RELEVANT FACTS

When considering a habeas corpus petition, the Court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Accordingly, we adopt the facts as set forth by the Illinois Appellate Court. *People v. Michael McClellan*, Nos. 1-96-3030, 1-96-3031, 1-96-4019 (Ill. App. Ct. Nov. 4, 1997).

At trial, Officer Lisa Thoren testified that, on April 15, 1995, at approximately 9:30 a.m., she and another officer were working undercover in the vicinity of 2630 West Flournoy, in Chicago, Illinois, when they observed Michael Keys hand an unidentified object to an unknown person in exchange for cash. Believing she had witnessed a drug transaction, Officer Thoren approached Keys. When Keys asked her "how many," she replied, "three." Keys then handed Officer Thoren three Ziploc bags containing a rock-like substance, later determined to be cocaine, in exchange for $30. Keys was subsequently detained by police officers.

Officer John Stewart testified that, on April 18, while conducting surveillance in the area of 2630 West Flournoy, he observed Keys through binoculars from a distance of 30 to 50 feet. Keys was standing on the street in front of the residence at 2630 West Flournoy yelling "rocks, park," which is street terminology for rock cocaine and crack cocaine. Officer Stewart observed Keys make ten separate transactions, each time exchanging a small plastic bag, which Keys removed from a larger plastic bag he was holding, for cash. After the tenth transaction, Keys knocked on the door of the residence at 2630 West Flournoy, handed his bundle of cash to Della Brown, and received another plastic bag from her.

After receiving the bag, Keys returned to the street and engaged in ten more transactions similar to the first ten that Officer Stewart observed. Afterwards, Keys returned to the 2630

2

West Flournoy residence and, once again, exchanged cash for a plastic bag. Officer Stewart radioed his partners to approach. When Keys saw the officers driving toward him, he dropped the plastic bag and walked away. He was subsequently arrested. The contents of the plastic bag tested positive for cocaine and heroin.

The officers knocked on the door of 2630 West Flournoy, and Brown answered, holding a Crown Royal bag. Brown fled from the officers and threw the bag away from her. The bag contained $149 in cash and several small plastic bags containing suspected narcotics.

Officer John Cruz, who participated in Keys' April 18 arrest, testified that he measured the distance from the Altgeld Park fence to Flournoy, which was 311 feet. Officer Cruz is not a surveyor or an employee of the park district.

On May 2, Officer Paul Sarpalius observed Keys leave 2630 West Flournoy holding a plastic bag. Officer Sarpalius saw Keys walk to the side of building located at 2628 West Flournoy and place the bag under a clump of bricks. Keys then sat on the front steps of the 2628 West Flournoy building. After an individual approached Keys and gave him cash, Keys walked over to the bricks, removed the bag, took something out of it, and then placed the bag back under the bricks. Keys gave the object he had retrieved from the bag to the individual who had given him the cash. Officer Sarpalius testified that he witnessed two additional similar transactions and then he, along with three other surveillance officers, returned to their cars and drove toward Keys. Officer Sarpalius lost sight of Keys and the bag for approximately two minutes. After leaving his car, Officer Sarpalius recovered the plastic bag from under the bricks. The contents of the plastic bag tested positive for cocaine.

Both Keys and Brown testified that, on April 15, 1995, at 9:30 a.m., Keys was "getting

3

high" with Brown. Both testified that Keys did not sell drugs to anyone on either April 15th, April 18th or May 2nd.

## I. Procedural History

After a bench trial, Keys was found guilty of delivery of a controlled substance, possession of a controlled substance with intent to deliver, and possession of a controlled substance with intent to deliver within 1,000 feet of a public park. He was sentenced to consecutive prison terms of three, ten, and five years respectively. Keys appealed to the appellate court, claiming that: (1) he was not proven guilty beyond a reasonable doubt where the evidence was so improbable as to be contrary to human experience; (2) he was not proven guilty of selling drugs within 1000 feet of a public park; and (3) he was not proven guilty beyond a reasonable doubt where the officer lost sight of the bag he saw Keys place under some bricks. The Illinois Appellate Court affirmed Keys' conviction on November 4, 1997. Keys filed a petition for rehearing, which was denied. Keys then filed a petition for leave to appeal to the supreme court, arguing that he was entrapped because the only fingerprints on the drug package were the officer's prints.[2] The supreme court denied Keys' petition for leave to appeal on April 1, 1998.

On February 11, 1999, Keys filed a "Motion for a Corrected Mittimus," which was

---

[2] The copy of Keys' petition for leave to appeal, which the State provided to this Court, was illegible. Consequently, we requested and received another copy of the petition for leave to appeal from the supreme court, which also was illegible. The State, in its answer filed on September 7, 2000, avers that the petition for leave to appeal contained the single argument that Keys was entrapped because the only fingerprints on the drug package were the officer's prints. We need not be concerned with whether that is an accurate summary of the argument(s) contained in Keys' petition for leave to appeal because Keys' habeas claims were not raised either before the trial court or the appellate court on direct appeal and, thus, were waived.

4

denied by the trial court. The State points out, and we agree, that the trial court seems to have treated this motion as a post-conviction petition. Keys appealed the dismissal to the appellate court, and his counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), stating that there were no appealable issues. Keys filed two *pro se* responses to the *Finley* motion arguing that (1) the denial of the post-conviction petition was a violation of the constitutional prohibition on *ex post facto* laws; and (2) he was not being credited with time he served during trial on each of his offenses. On November 8, 1999, the appellate court granted the public defender's motion for leave to withdraw as counsel and affirmed the judgment of the circuit court. Subsequently, on January 18, 2000, Keys filed a *pro se* petition for leave to appeal to the supreme court, arguing that: (1) he had been denied additional credit to which he was entitled on two of the offenses he had been convicted of; and (2) counsel was ineffective for failing to raise the issue of the improperly denied credit. The supreme court denied Keys' petition for leave to appeal on April 5, 2000.

On April 20, 2000, Keys filed a *pro se* habeas petition in our Court, which we dismissed without prejudice for failure to comply with Rule 2 of the rules governing section § 2254 cases. Keys filed an amended habeas petition on June 21, 2000, arguing that: (1) he had been subject to an illegal arrest and search in violation of the Fourth Amendment; (2) he was deprived of his property without just compensation and subjected to double jeopardy in violation of the Fifth Amendment, when his $149 was forfeited; (3) the trial court unconstitutionally heard all three of his cases back to back; and (4) the police officer was unable to make an identification of the

5

person who supposedly sold her the drugs, and Keys was denied forensic fingerprint testing.[3]

## ANALYSIS

### I. Procedural Default

Before a federal court can consider the merits of a petition for habeas corpus, the petitioner must overcome two procedural hurdles: exhaustion of state court remedies and lack of procedural default. In the instant case, the State concedes, and we agree, that Keys has met the exhaustion requirement. (R. 13, Resp't's Answer ¶ 18.) Keys pursued his direct appeal to the supreme court, which denied his petition for leave to appeal. Furthermore, his "Motion for a Corrected Mittimus," which seems to have been treated by the trial court as a post-conviction petition, was denied. Even if Keys did not intend for his "Motion for a Corrected Mittimus" to serve as his post-conviction petition, the record indicates that the state courts all treated it as such. Keys appealed the decision to the appellate court and subsequently filed a petition for leave to appeal to the supreme court, which also was denied. In any event, because the time for filing a post-conviction petition has expired, *see* 725 ILCS 5/122-1(c) (West 2000), Keys has exhausted his state remedies.

Keys, however, has not met the second procedural hurdle and has procedurally defaulted all of his habeas claims. The doctrine of procedural default requires that a state prisoner "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In this case, Keys did not fairly present any of his federal claims in his

---

[3] Although Keys, in his habeas petition, numbers his claims 1-8, for ease of analysis, we have consolidated his enumerated claims into these four.

state appeals, and state remedies are no longer available to him. Thus, his claims are procedurally defaulted. Even if Keys still has state post-conviction remedies available, Illinois courts would consider the claims waived. Consequently, Keys procedurally defaulted his habeas claims.

A federal court may not address any claim that has been procedurally defaulted unless the petitioner either can show cause and prejudice for the default or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice such as would excuse the procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Cawley v. DeTella*, 71 F.3d 691, 695, 696 (7th Cir. 1995). Keys does not argue cause and prejudice or fundamental miscarriage of justice. Therefore, federal habeas corpus review of his claims is barred.[4]

## II. Fourth Amendment Claims

Aside from the fact that Keys' claims are not procedurally defaulted, we could not consider Keys' Fourth Amendment claims for the additional reason that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (cited in *United States, ex rel. Davis v. Cowen*, 89 F. Supp. 2d 1007, 1008 (N.D. Ill. 1999)). A habeas petitioner is considered to have had an "opportunity for full and fair litigation" of his Fourth Amendment claim when "(1) the petitioner has clearly informed the state court of the factual basis for that claim and has argued that those facts constitute a violation of the

---

[4] Even if these claims were not procedurally defaulted, they would not meet the standards for habeas relief.

7

petitioner's fourth amendment rights, and (2) the state court has carefully and thoroughly analyzed the facts and applied the proper constitutional case law to the facts." *Pierson v. O'Leary*, 959 F.2d 1385, 1391 (7th Cir. 1992) (cited in *Davis*, 89 F. Supp. 2d at 1008). In this case, although Keys had a full and fair opportunity to present his Fourth Amendment arguments to the state courts, for whatever reasons, he did not take advantage of it. Thus, Keys has not satisfied the threshold requirement of clearly presenting his Fourth Amendment claims to the state courts, and federal collateral review of his Fourth Amendment claims is foreclosed by *Stone*. See *Turentine v. Miller*, 80 F.3d 222, 224 (7th Cir. 1996).

### III. Insufficient Evidence

Keys' insufficient evidence claim also fails for the additional reason that it is not cognizable. We may only grant habeas relief on an insufficient evidence claim if the prisoner can show that no rational trier of fact, "viewing the evidence in the light most favorable to the prosecution . . . could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Morrison*, 207 F.3d 962, 966 (7th Cir. 2000). Under 28 U.S.C. § 2254(d)(2), we must defer to state court factual determinations. In this case, there is sufficient evidence in the record to convict Keys of the crimes with which he was charged. Keys sold an undercover police officer three bags of cocaine. Three days later, another police officer observed Keys selling rock cocaine and crack cocaine within a few hundred feet of a park. Two weeks later, yet another police officer observed Keys selling cocaine. We cannot conclude that the trial court's factual determination was unreasonable in light of the evidence presented. A rational trier of fact could have convicted Keys on these facts.

## CONCLUSION

For the reasons set forth above, we deny Keys' petition for a writ of habeas corpus. (R. 12-1.) The Clerk of the Court is instructed to enter final judgment, pursuant to Federal Rule of Civil Procedure 58, against Keys.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: January 12, 2001